### OFFICE OF the LIEUTENANT GOVERNOR, Petitioner

v.

### Daniel MOHN, Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 13, 2013.
Decided April 24, 2013.

Delene Lantz Johnson, Deputy General Counsel, Harrisburg, for petitioner.

Craig J. Staudenmaier, Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY President Judge PELLEGRINI.

The Office of the Lieutenant Governor (OLG) petitions for review of a Final Determination of the Office of Open Records (OOR) directing the OLG to disclose to Daniel Mohn (Requester) the home address of an OLG employee and all agency-issued e-mail addresses for Lieutenant Governor James Cawley. For the reasons that follow, we affirm in part and reverse in part.

On April 25, 2012, Requester submitted a request to the OLG under the Right–to–Know Law (RTKL)[1] seeking all agency-issued e-mail addresses for the Lieutenant Governor and two Board of Pardons' employees; all agency-issued telephone numbers for an OLG employee; the home addresses of the Lieutenant Governor and an OLG employee; and copies of the OLG's

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104. The RTKL was designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials and make public officials accountable for their actions. *Bowling v. Office of Open Records*, 990 A.2d 813, 824 (Pa.Cmwlth.2010), *appeal granted*, 609 Pa. 265, 15 A.3d 427 (2011). The current version of the RTKL, passed in 2008, changed the method of access to an individual's personal information and set forth new criteria to determine whether information is protected from disclosure. *Delaware County v. Schaefer ex rel. Philadelphia Inquirer*, 45 A.3d 1149, 1151–52 (Pa.Cmwlth.2012). Under the current RTKL, a record in the possession of a Commonwealth agency or local agency is presumed to be a public record unless (1) the record is exempt under Section 708; (2) the record is protected by a privilege; or (3) the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree. Section 305(a) of the RTKL, 65 P.S. § 67.305(a). Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1), entitled "Exceptions for public records," places the burden on the agency to prove by a preponderance of the evidence that a particular record is exempt from public access. *Schaefer*, 45 A.3d at 1152.

responses to previous RTKL requests dealing with some of the same information he was requesting.

The OLG responded explaining that it does not issue e-mail addresses or telephone numbers, so it would treat the request as one for government-issued email addresses and telephone numbers that were issued to members of the OLG. The OLG provided the government-issued e-mail addresses and telephone numbers for the requested individuals that were held out to the public as e-mail addresses or telephone numbers at which the public officials could be contacted but, citing the personal identification information[2] exception to the RTKL, denied the request to the extent it was seeking additional personal e-mail addresses for those individuals used to communicate with other agency officials. The OLG also denied the request for the home address of the OLG employee, citing the personal security[3] and personal identification information exceptions to the RTKL. However, the OLG granted access to its responses to another individual's prior RTKL requests, and because those responses contained some of the information sought by Requester here, the OLG noted that "some of the denied information is being provided outside of the RTKL."[4] (R.R. at 3a).

Requester appealed to the OOR, seeking the information to which the OLG had denied access. In support of its position to deny access based on the personal security exemption, the OLG submitted the affidavit of Eric Avakian (Avakian), its Chief Information Security Officer, attesting that the disclosure of home addresses increases the risk of social engineering attacks and identity theft, and copies of the OLG's responses to other prior RTKL requests. It also maintained that access should be denied for the other reasons given in the denial letter.

The OOR granted Requester access to both the OLG employee's home address and all agency-issued e-mail addresses for the Lieutenant Governor. With regard to home addresses, it noted that such information is not protected under the personal identification information exception or under the right to privacy principles embodied in the Pennsylvania Constitution because there is no expectation of privacy in home addresses. Moreover, in finding that the personal security exemption did not apply, it stated that nothing in OLG's Chief Security Officer Avakian's affidavit led it to conclude that the disclosure of home addresses is reasonably likely to result in identity theft and fraud, and went on to note that more than mere conjecture is needed to meet the "heightened standard" of establishing that the personal security exemption applies.

---

2. Section 708(b)(6)(i) of the RTKL, 65 P.S. § 67.708(b)(6)(i), exempts the following from disclosure:
   (A). A record containing all or part of a person's Social Security number, driver's license number, personal financial information, home, cellular or personal telephone numbers, personal e-mail addresses, employee number or other confidential personal identification number.
   (B) A spouse's name, marital status or beneficiary or dependent information.
   (C) The home address of a law enforcement officer or judge.

3. Section 708(b)(1)(ii) of the RTKL, 65 P.S. § 67.708(b)(1)(ii), exempts information from public disclosure that, if released, "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual."

4. Specifically, the OLG's responses to those prior RTKL requests included the home address of the Lieutenant Governor and the personal e-mail addresses of the two Board of Pardons' employees.

Regarding the disclosure of all agency-issued e-mail addresses for the Lieutenant Governor, the OOR held:

> E-mails created by public officials, acting in their official capacity, for the purpose of furthering agency business are public records.... Similarly, e-mail addresses created for public officials to transact agency business cannot be considered anything other than public records. The OOR concludes that the word "personal" in "personal email addresses" is not intended to apply to email addresses assigned to specific public officials and public employees. Rather, the word "personal" is intended to apply to e-mail addresses not used for agency business. Had the General Assembly intended employee e-mail address[es] to be exempt from public disclosure, it would have specifically stated "employee e-mail addresses" instead of "personal email addresses."

(OOR's June 13, 2012 Final Determination at 5) (citation omitted). The OLG then filed this appeal.[5]

## I.

### A.

On appeal, the OLG, conceding that the personal identification information exception of the RTKL does not provide blanket protection for home addresses,[6] contends that case law under the previous version of the RTKL recognized a constitutional privacy right in one's home address and required a balancing. of interests before the disclosure of such information. That balancing test, which placed the burden on the requester to demonstrate why the public need for disclosure outweighs the constitutional right to privacy, should continue under the current RTKL, the OLG argues, and under such a test, Requester has failed to meet his burden. However, as our Supreme Court recently noted in *Pennsylvania State Education Association ex rel. Wilson v. Commonwealth*, —— Pa. ——, 50 A.3d 1263, 1277 (2012) (citing *Pennsylvania State Education Association v. Commonwealth*, 4 A.3d 1156, 1162 (Pa.Cmwlth.2010)), "determining whether 'the privacy exception and its attendant balancing test have continued viability under the new Law is a proposition fraught with challenge.'" To explain why it is "fraught with challenge," a short history of the right to privacy *vis a vis* public records is in order.

Pennsylvania enacted its first Right–to–Know Law in 1957 (old RTKL).[7] Section 66.1(2) of the old RTKL defined what records constituted public records. In doing so, it excluded from the definition of public records those "which would operate to the prejudice or impairment of a person's reputation or personal security."

---

5. "The scope of review for a question of law under the [RTKL] is plenary." *Stein v. Plymouth Township*, 994 A.2d 1179, 1181 n. 4 (Pa.Cmwlth.2010). "A reviewing court, in its appellate jurisdiction, independently reviews the OOR's orders and may substitute its own findings of fact for that of the agency." *Bowling*, 990 A.2d at 818.

6. In *Schaefer*, this Court held:
   [B]ecause there is no mention of birth dates and home addresses of "all other" public employees in the Personal Identification Exception, these items are not entitled to the unconditional protection afforded the home addresses and birth dates of certain vulnerable or at-risk individuals such as law enforcement officers, judges and minor children. They are, therefore, not categorically exempt under the Personal Identification Exception.
   45 A.3d at 1153.

7. Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1–66.9, repealed by Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

Before the 1990s, Pennsylvania courts were consistent in holding that Section 66.1(2) of the old RTKL did not grant a right to privacy to those whose home addresses were requested pursuant to it. In *Young v. Armstrong School District*, 21 Pa.Cmwlth. 203, 344 A.2d 738 (1975), we stated:

> The Right to Know Act, however, contains no clause or provision to protect against the invasion of an individual's privacy as does the federal Freedom of Information Act, 5 U.S.C. § 552, and for us to equate a concept of privacy with the concept of 'personal security' would usurp the legislative prerogative of the General Assembly.... The concept of personal security, we believe, involves protection from personal harm rather than protection from an invasion of privacy. To hold otherwise would render the Act nugatory. Moreover, we have held that for records to fall within the personal security exception they must be intrinsically harmful and not merely capable of being used for harmful purposes.

*Id.* at 740. In *Mergenthaler v. Commonwealth State Employes' Retirement Board*, 33 Pa.Cmwlth. 237, 372 A.2d 944 (1977) (citing *Kanzelmeyer v. Eger*, 16 Pa.Cmwlth. 495, 329 A.2d 307 (1974)), we held that "the phrase 'personal security' does not mean 'personal privacy,' as the lower court seems to have concluded." *Mergenthaler*, 372 A.2d at 946. We went on to explain that in order for records to fall within the personal security exception, they must be intrinsically harmful, which a list of names and addresses is not. *Id.* at 947–48.

In 1983, in a non-RTKL case dealing with the Public Officials Ethics Act,[8] our Supreme Court in *Denoncourt v. Commonwealth State Ethics Commission*, 504 Pa. 191, 470 A.2d 945 (1983), found for the first time that there is a constitutional right to privacy grounded in Article 1, Sections 1 and 8 of the Pennsylvania Constitution. This right to privacy extends to the freedom of disclosure of personal matters, but it is not absolute. Rather, it must be balanced against a countervailing state interest as well as its relationship to other basic rights. In general, "it may be said that government's intrusion into a person's private affairs is constitutionally justified when the government interest ... is significant and there is no alternate reasonable method of lesser intrusiveness to accomplish the governmental purpose." 504 Pa. at 199–200, 470 A.2d at 949 (footnotes omitted).

A decade later, for the first time, this Court extended the *Denoncourt* analysis to home addresses requested pursuant to the old RTKL. In *Times Publishing Company, Inc. v. Michel*, 159 Pa.Cmwlth. 398, 633 A.2d 1233 (1993), a reporter requested to view and copy written applications pertaining to valid licenses to carry firearms. The trial court held that all information on the licenses was subject to disclosure except for the addresses, telephone numbers and social security numbers of the applicants. This Court affirmed, holding in a 4–3 decision that the *Denoncourt* privacy analysis applied to the personal security exception of the old RTKL, and that public disclosure of home addresses would constitute an unwarranted invasion of privacy that outweighed any public benefit derived from disclosure. Two years later, in *Tribune–Review Publishing Company v. Allegheny County Housing Authority*, 662 A.2d 677 (Pa.Cmwlth.1995), in another 4–3

8. Act of October 4, 1978, P.L. 883, No. 170, 65 P.S. §§ 401–413, *repealed by* 65 Pa.C.S. §§ 1101–1113.

decision, this Court again stated explicitly that the right to privacy granted by Article 1, Section 1 of the Pennsylvania Constitution applied to the old RTKL's personal security exemption. Although the specific issue of whether the release of home addresses would violate this right to privacy was moot, the majority, in a footnote, stated, "[W]e are cognizant of the fact that we are expressly overruling that part of *Young v. Armstrong [School District]*, which found no right of privacy existed in the Right to Know Act." *Id.* at 683 n. 9.

Our Supreme Court took up the issue in *Sapp Roofing Company, Inc. v. Sheet Metal Workers' International Association, Local Union No. 12*, 552 Pa. 105, 713 A.2d 627 (1998). In this case, a labor union desired to examine a private contractor's payroll records that were in the possession of a public agency to see if the contractor complied with the Prevailing Wage Act.[9] Among the information on the payroll records were the names, home addresses, telephone numbers and social security numbers of the contractor's employees. The Supreme Court concluded that the public interest in disclosure was weak while the right to privacy and personal security was strong; therefore, those portions of the records could not be disclosed. Significantly, the Supreme Court never mentioned the Pennsylvania Constitution other than in discussing the contractor's contentions before it, and only begins its right to privacy analysis after quoting and highlighting the old RTKL's statutory language concerning reputation and personal security. *Sapp Roofing* is ambiguous concerning the origins of the right to privacy in personal information such as home addresses, but it seemed to imply that the right's origin was in the specific statutory language of the old RTKL.

The first case that addressed the privacy cases in the age of the Internet was in *Commonwealth v. Duncan*, 572 Pa. 438, 817 A.2d 455 (2003). In *Duncan*, a criminal case, our Supreme Court explicitly held that the constitutional right to privacy enunciated in *Denoncourt* does not extend to one's home address. The *Duncan* court explained:

> [W]e agree with the Commonwealth that any subjective expectation of privacy that appellant may have had in the name and address information is not an expectation which society would be willing to recognize as objectively reasonable in light of the realities of our modern age. Whether registering to vote, applying for a driver's license, applying for a job, opening a bank account, paying taxes, etc., it is all but impossible to live in our current society without repeated disclosures of one's name and address, both privately and publicly. There is nothing nefarious in such disclosures. An individual's name and address, by themselves, reveal nothing about one's personal private affairs. Names and addresses are generally available in telephone directories, property rolls, voter rolls, and other publications open to public inspection. In addition, it has become increasingly common for both the government and private companies to share or sell name or address information to unaffiliated third parties....
>
> In this day and age where people routinely disclose their names and addresses to all manner of public and private entities, this information often appears in government records, telephone directories and numerous other documents that are readily accessible to the public, and where customer lists are regularly sold to marketing firms and other busi-

---

9. Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. §§ 165–1–165–17.

nesses, an individual cannot reasonably expect that his identity and home address will remain secret—especially where, as here, he takes no specific action to have his information treated differently and more privately.

We are further convinced of the correctness of our conclusion that no privacy expectation reposes in this information by the fact that the majority of courts to consider the question have agreed that a person's name and address is not information about which a person can have a reasonable expectation of privacy.

572 Pa. at 455–56, 817 A.2d at 465–66 (citations omitted). A person has a constitutionally-protected expectation of privacy in cases where: (1) the person has exhibited an actual (subjective) expectation of privacy; and (2) society is prepared to recognize the expectation of privacy as reasonable. *Id.* at 452, 817 A.2d at 463; *Commonwealth v. Rekasie*, 566 Pa. 85, 92, 778 A.2d 624, 628 (2001). *Duncan* holds that no one in this day and age can have a legitimate expectation of privacy in home addresses, so you never get to balance the state interest against the expectation of privacy because there is no expectation of privacy. After *Duncan*, the Internet and search, social and other sites with the sole purpose of giving out personal information became common. So now, in addition to people routinely disclosing their home addresses, those home addresses can easily be obtained by conducting internet

searches, which not only reveal a person's home address and their age, but also other individuals that live at that address and their ages. *See, e.g.* http://www.whitepages.com. Other sites have a picture of your home and its value. *See, e.g.,* http://www.zillow.com.

In a case decided under the old RTKL where the personal security exemption and the right to privacy was somewhat conflated, we held in *Hartman v. Department of Conservation and Natural Resources*, 892 A.2d 897 (Pa.Cmwlth.2006), that home addresses were not subject to disclosure. We did not apply *Duncan* because it was a criminal case, although our Supreme Court used both civil and criminal cases from other jurisdictions in making that analysis. Recently, however, our Supreme Court affirmed, *per curiam*, this Court's decision in *Marin v. Secretary of the Commonwealth*, 41 A.3d 913 (Pa. Cmwlth.2012), *aff'd*, —— Pa. ——, 66 A.3d 250 (2013),[10] our first case addressing whether home addresses were exempt under the new RTKL or under a constitutional right to privacy. Relying on language in *Duncan*, quoted above, we held "there is no constitutional right to privacy in one's home address under the Pennsylvania Constitution." *Id.* at 915. Based on the foregoing reasoning, we hold that there is no constitutional right to privacy in one's home address under the Pennsylvania Constitution that would preclude the release of the home addresses.[11]

---

10. We note that *Marin* was a single-judge opinion and that such an opinion, "even if reported, shall be cited only for its persuasive value, not as binding precedent." *Ario v. Reliance Ins. Co.*, 602 Pa. 490, 510, 980 A.2d 588, 599 (2009); Section 414 of the Commonwealth Court's Internal Operating Procedures, 210 Pa.Code § 69.414.

11. Judge Cohn Jubelirer's concurring opinion posits that our Supreme Court's holding in *Pennsylvania State Education Association ex*

*rel. Wilson v. Commonwealth*, —— Pa. ——, 50 A.3d 1263 (2012), suggests that it remains unsettled whether there is a constitutional right to privacy in one's home address information. That case involved a lawsuit brought by individual school employees and the PSEA against the OOR for injunctive and declaratory relief, seeking to protect the employees' home addresses from disclosure. We sustained the OOR's preliminary objections alleging that we lacked subject matter jurisdiction because the OOR was not an indispensable

■ Because there is no constitutional privacy right in one's home address, any previous privacy exception for that information was based only in statute. There is no language in the current RTKL's personal security exception that requires the agency to balance personal security interests against the benefits of disclosure. In the absence of such express language, this Court cannot adopt the balancing test utilized under the prior version of the RTKL. *See Governor's Office of Administration v. Purcell*, 35 A.3d 811, 820 (Pa.Cmwlth.2012) ("there is no privacy exception embedded in the current RTKL applying to all birth dates; consequently, no balancing of interests is contemplated by the current RTKL"); 1 Pa.C.S. § 1921(b) (when the words of a statute are free and clear from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit). Accordingly, the OLG's contention that Requester had the burden of proving that the public need for disclosure of an employee's home address outweighs that employee's privacy interests is without merit.

### B.

■ Alternatively, the OLG argues that the evidence it submitted to the OOR was sufficient to prove that employees' home address information falls under the RTKL's personal security exception. In order to withhold information from public disclosure pursuant to the personal security exception of the RTKL, an agency "*must* meet its burden of proving by a preponderance of the evidence that disclosure of such 'would be reasonably likely to result in a substantial and demonstrable risk of *physical harm* to the *personal security* of an individual.'" *Schaefer*, 45 A.3d at 1156 (emphasis in original). In order to meet that burden, "[m]ore than mere conjecture is needed." *Purcell*, 35 A.3d at 820. Moreover, "[g]eneral, broad-sweeping conclusions will not be a substitute for actual evidence of the likelihood of a demonstrable risk to the individuals involved posed by a particular disclosure." *Schaefer*, 45 A.3d at 1158.

In support of its assertion that the disclosure of the home addresses of government employees would be reasonably likely to result in a risk of harm to the personal security of those individuals, the OLG presented the affidavit of its Chief Security Officer, Avakian. The affidavit states that home addresses are one of the many elements often used for the express purpose of distinguishing individual identity, and that a home address "clear-

Commonwealth party. In addressing Appellants' constitutional claims, we explained that *Duncan* had already held that there is no constitutional right to privacy in home address information. On appeal, the Supreme Court vacated and remanded our order sustaining the OOR's preliminary objections, holding that it "agree[d] with Appellants' central position that the OOR may fairly be regarded as an indispensable party" because the RTKL "does not provide public school employees with a reliable administrative or judicial method by which to seek redress for action that they believe violates the statutory scheme and/or their constitutional rights." *Id.* at 1274, 1275–76. The Court's holding in *PSEA* focused more on the ability of third parties whose information is requested under the RTKL to challenge the disclosure of such information, not on whether there is a constitutional privacy right in home address information. Contrary to the assertion in the concurring opinion here, the *PSEA* Court did not reject the OOR's argument that *Duncan* had already held that home addresses are not constitutionally protected. Rather, the Court merely held that "[t]he present declaratory judgment proceedings will afford the [Commonwealth Court] the opportunity to clarify its position" on whether the prior RTKL's balancing test should continue to be applied. *Id.* at 1276 n. 10. Moreover, we note that our decision in *Marin* relied on *Duncan*.

ly constitutes" Personally Identifiable Information (PII), based on various federal agencies' and state courts' definitions of that term. The affidavit claims that once various pieces of PII have been disclosed to a third party, that information can be exploited by cyber stalkers and criminals to commit identity theft or other types of crimes. The affidavit further asserts that:

> Divulging home address information significantly increases the risk of social engineering attacks on the individuals whose information was divulged. For instance, someone with this specific information can conduct reconnaissance to gather additional details about an individual and target them directly by calling or emailing the individual, and pretending to be a representative for the individual's company. The attacker could then verify the individual's name and home address, which will, in turn, help to gain the targeted trust of the individual. Once a trust relationship has been established between the attacker and victim, the attacker is already down the path of gathering more information, including but not limited to, gaining financial, personal, or other sensitive information that the attacker would not have otherwise known. Identity theft is the likely result. According to Justice Department figures, in about 8.6 million households at least one person 12 or older experienced some kind of identity theft in 2010.

(R.R. at 27a–28a).

After reviewing Avakian's affidavit, we agree with the OOR that "nothing in his affidavit leads [to the conclusion] that

home addresses should be added to the 'Holy Trinity' of personal information, *i.e.*, person's name, social security number and date of birth, that are reasonably likely to result in identity theft and fraud." (OOR's June 13, 2012 Final Determination at 6). First, as the courts of this Commonwealth have held and as we have stated above, any expectation of privacy that an individual may have in his or her home address information is not objectively reasonable in modern society. *See Duncan; Marin.* Second, the affidavit contains no actual evidence that the disclosure of home addresses is reasonably likely to result in identity theft, and fails to demonstrate even a correlation between the disclosure of home addresses and an increased likelihood of identity theft. To the contrary, the affidavit indicates that identity theft only occurs after the identity thief has taken additional steps to contact the victim, gain the victim's trust and convince the victim into disclosing truly confidential information. Moreover, a number of Avakian's conclusions are not supported by the facts stated in the affidavit. For instance, he concludes that a home address "clearly constitutes" PII, yet the definitions of PII he cites to specifically do not include home addresses as PII.[12]

Based on the foregoing, the OLG did not meet its burden of proving that disclosure of an individual's home address would be reasonably likely to result in a substantial and demonstrable risk of harm to the personal security of that individual. Accordingly, the OOR correctly determined that an OLG employee's home address is subject to disclosure under the RTKL.

---

12. For example, the affidavit cites to a 2007 Office of Management and Budget memorandum from the Executive Office of the President, which defines PII as "[i]nformation which can be used to distinguish or trace an individual's identity, such as their name, so-cial security number, biometric records, etc. alone, or when combined with other personal or identifying information which is linked or linkable to a specific individual, such as date and place of birth, mother's maiden name, etc." (R.R. at 25a).

## II.

█ The OLG next argues that the Lieutenant Governor's secondary, government-issued e-mail addresses are exempt from disclosure under the personal identification information exception to the RTKL. That exception exempts from disclosure, *inter alia*, "a record containing all or part of a person's . . . personal e-mail addresses." Section 708(b)(6)(i)(A) of the RTKL, 65 P.S. § 67.708(b)(6)(i)(A). The OLG contends that "personal identification information" refers to information that is unique to a particular individual, and a "personal email address" is one intended for the use of a specific person. It argues that nothing in the RTKL restricts the exception to non-government issued e-mail addresses or suggests that the word "personal" only applies to e-mail addresses not used for agency business.

Both the OOR and Requester focus on the fact that the e-mail address in question may be used to conduct official government business. For instance, Requester argues in his brief that "[t]here is nothing personal . . . about a government-issued e-mail account that is used to conduct agency business at the public's expense." (Petitioner's Brief at 31). Similarly, the OOR concluded that because e-mails created by public officials acting in their official capacity for the purpose of furthering agency business are public records, it follows that e-mail addresses created for public officials to transact agency business must also be considered public records.

What is considered "personal identification information" is not defined in the RTKL. However, this Court has defined the term as:

[I]nformation that is unique to a particular individual or which may be used to identify or isolate an individual from the general population. It is information which is specific to the individual, not shared in common with others; that which makes the individual distinguishable from another.

*Schaefer*, 45 A.3d at 1153. Whether the exemption for "personal identification information" extends to a government-issued "personal" e-mail address, in *City of Philadelphia v. Philadelphia Inquirer*, 52 A.3d 456, 461–462 (Pa.Cmwlth.2012), we addressed whether the daily governmental schedules of the Mayor and the City Council Members were exempt under Section 708(b)(12) of the RTKL, 65 P.S. § 67.708(b)(12),[13] because they were being used for those officials' "own personal use." Rejecting a claim similar to this one that those calendars are not personal because they are used for government business, we held that " '[p]ersonal' . . . does not mean that it has to involve a public official's personal affairs" but also "covers those documents necessary for that official that are 'personal' to that official in carrying out his public responsibilities." *City of Philadelphia*, 52 A.3d at 461.

While the secondary e-mail address in question is used to conduct agency business, it still falls within Section 708(b)(6)(i)(A) of the RTKL's exemption of "a record containing all or part of a person's . . . personal e-mail address" because, even though it is being used to transact public business, nonetheless, it is still personal to that person. We note that other than the identification of the e-mail address in question, a requester would clearly have the ability to request e-mails

---

**13.** That provision exempts from disclosure: "Notes and working papers prepared by or for a public official or agency employee used solely for that official's or employee's **own** **personal use,** including telephone message slips, routing slips and other materials that do not have an official purpose." (Emphasis added.)

from that account under the RTKL, provided that they were not exempt from disclosure.

Accordingly, the OOR's Final Determination is affirmed to the extent that it provided access to the home address of an OLG employee, but reversed as to the portion providing for the disclosure of all agency-issued e-mail addresses for Lieutenant Governor Cawley.[14]

Judge BROBSON did not participate in the decision in this case.

### ORDER

AND NOW, this *24th* day of *April,* 2013, the Final Determination of the Office of Open Records, dated June 13, 2012, at No. AP2012–0787, is affirmed in part and reversed in part. The Final Determination is affirmed to the extent that it provided access to the home address of an employee of the Office of the Lieutenant Governor, but reversed as to the portion providing for the disclosure of all agency-issued e-mail addresses for Lieutenant Governor Cawley.

### CONCURRING OPINION BY Judge COHN JUBELIRER.

I agree that the Right to Know Law[1] (RTKL) does not provide unconditional

protection for home addresses. However, where, as here, the issue is raised, we must examine the Pennsylvania Constitution to determine whether the right to privacy affords protection in an individual case. The majority opinion states unequivocally that an individual can never assert a constitutional right to privacy in his or her home address under the Pennsylvania Constitution. Because I believe the majority opinion goes too far in making this declaration, I, respectfully, cannot join in the opinion.

I admire the majority's valiant effort to provide a "short history of the right to privacy *vis a vis* public records" particularly in an area recognized as so "fraught with challenge." *Office of the Lieutenant Governor v. Mohn,* 67 A.3d 123, 127 (Pa. Cmwlth.2013). Considerable confusion has arisen regarding the nature of this constitutional inquiry, and its place in the statutory construction of the provisions of the various RTKLs over the years.[2] I, therefore, begin with some basic legal propositions.

First, our Court should not reach a constitutional question unless it is specifically raised by the parties.[3] For example, in *Young v. Armstrong School District,* 21

---

**14.** Requester also requests that this Court find that the OLG denied his request in bad faith and impose sanctions pursuant to Sections 1304 and 1305 of the RTKL, 65 P.S. §§ 67.1304–1305. Requester argues that the OLG "has admitted that it possesses and uses government issued email accounts that it refuses to disclose claiming they are 'personal' to the Lieutenant Governor." (Petitioner's Brief at 35). Requester claims that the OLG lacks a reasonable basis in the law to assert such an exemption. However, because we agree with the OLG on this point, Requester's sanctions argument is without merit.

**1.** Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

**2.** I note that the cases balancing a person's constitutional right to privacy with the personal security exception under the old RTKL do not clearly separate the Pennsylvania Constitution from the statutory law.

**3.** In general, matters not raised in the court below cannot be considered on appeal even if they involve constitutional questions. *Altman v. Ryan,* 435 Pa. 401, 407, 257 A.2d 583, 585 (1969). *See also* Pa. R.A.P. 1551 ("No question shall be heard or considered by the court which was not raised before the government unit.").

Pa.Cmwlth. 203, 344 A.2d 738, 740 (1975), this Court found that the old RTKL did not contain any "clause or provision to protect against the invasion of an individual's privacy" and distinguished between the personal security exception and a right to privacy. In reaching this determination, the opinion in *Young* does not even intimate that a constitutional challenge was raised, and does not engage in a constitutional analysis. Thus, *Young* cannot assist us in a constitutional inquiry. It would be a separate inquiry, and only if it is specifically raised, that would allow a court to reach the constitutional question, which is whether, notwithstanding the statutory language in the RTKL, the Pennsylvania Constitution nonetheless protects an individual's right to privacy in a given case.

Second, a court will reach the constitutional issue only if the case before it cannot be resolved on non-constitutional grounds.[4] Thus, whether or not the RTKL actually contains a clause or provision that protects an individual's right to privacy is the first inquiry.

Finally, where a right is protected by the Pennsylvania Constitution, a statute cannot reduce or eliminate that right.[5] Therefore, to the extent a right to privacy exists under the Pennsylvania Constitution, the RTKL and its provisions cannot limit or circumscribe the contours of that right.

The right to privacy in the Pennsylvania Constitution can be found in Article I, Sections 1 and 8.[6] There is no precise counterpart to Article I, Section 1 of the Pennsylvania Constitution in the United States Constitution. Scholars have stated that the right to privacy "is perhaps the most broadly protected of all of the rights safeguarded under Section 1, and it likely will be further expanded in future years."[7] The Pennsylvania Courts have, at times, interpreted Article I, Section 8 to provide greater protection for the rights of privacy and reputation than have been afforded under the United States Constitution.[8] Moreover, "the courts of Pennsylvania have recognized independent constitutional protections for privacy under the Pennsylvania [C]onstitution in three dimensions: protection against governmental efforts to

---

4. "It is well settled that when a case raises both constitutional and non-constitutional issues, a court should not reach the constitutional issue if the case can properly be decided on non-constitutional grounds." *Ballou v. State Ethics Commission*, 496 Pa. 127, 129, 436 A.2d 186, 187 (1981).

5. A statute will be found to be unconstitutional if it is proven that the law clearly, palpably and plainly violates a fundamental constitutional right, such as the right to privacy. *Nixon v. Commonwealth*, 576 Pa. 385, 399–400, 839 A.2d 277, 286–87 (2003).

6. Article I, Section 1 of the Pennsylvania Constitution provides:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. Art. I, § 1. Article I, Section 8 provides:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. Art. I, § 8.

7. Ken Gormley, Jeffrey Bauman, Joel Fishman, Leslie Kozler, The Pennsylvania Constitution, A Treatise on Rights and Liberties 87 (2004).

8. *See, e.g., Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), and cases cited therein.

obtain information about individuals, protection against dissemination of 'private' information, and protection of 'private' actions and arenas from governmental intrusion and regulation."[9] The Pennsylvania Supreme Court has stated that the right of privacy involves a freedom from disclosure of personal matters and freedom to make certain important decisions.[10] The privacy protections are not absolute, and the Supreme Court has used a balancing test, which balances "an individual's right to privacy against a countervailing state interest which may or may not justify, in the circumstances, an intrusion on privacy." *Denoncourt v. State Ethics Commission*, 504 Pa. 191, 199, 470 A.2d 945, 948 (1983) (Plurality).[11]

Given this background, I do not read our Supreme Court's decision in *Commonwealth v. Duncan*, 572 Pa. 438, 817 A.2d 455 (2003), as holding that an individual can never establish a right to privacy in a home address under Article I, Sections 1 or 8 of the Pennsylvania Constitution. In *Duncan*, the police asked a bank for the name and address of the holder of a bankcard that their investigation led them to believe had been used by a suspected rapist. To determine whether Duncan had a constitutional right to privacy in his name and address, such that the evidence should be suppressed, our Supreme Court used a two-part test which " 'requires a person to (1) have established a subjective expectation of privacy[;] and (2) have demonstrated that the expectation is one that society is prepared to recognize as reasonable and legitimate.' " *Duncan*, 572 Pa. at 452, 817 A.2d at 463 (quoting *Commonwealth v. Gordon*, 546 Pa. 65, 71, 683 A.2d 253, 256 (1996)).[12] In that case, our Supreme Court

**9.** Seth F. Kreimer, *The Right to Privacy in the Pennsylvania Constitution, reprinted in* Gormley, The Pennsylvania Constitution 786.

**10.** *Denoncourt v. State Ethics Commission*, 504 Pa. 191, 197–98, 201–02, 470 A.2d 945, 948, 950 (1983) (Plurality) (found a constitutional right to privacy grounded in Article I, Section 1 of the Pennsylvania Constitution).

**11.** *See also Sapp Roofing v. Sheet Metal Workers' International Association, Local Union No. 12*, 552 Pa. 105, 111, 713 A.2d 627, 630 (1998) (requiring redaction of personally identifying information regarding workers on public project before payroll records were released); *The Pennsylvania State University v. State Employees' Retirement Board*, 594 Pa. 244, 259, 935 A.2d 530, 538 (2007) (holding that the non-party employees' "privacy rights are insufficient to outweigh the public interest in publication of the factual bases for, and details of, guaranteed disbursements of Commonwealth funds"); *Hunt v. Pennsylvania Department of Corrections*, 698 A.2d 147, 150 (Pa.Cmwlth.1997) (prisoner's medical records were not public records under former RTKL).

**12.** We note that *Duncan* was a criminal case; however, the two-part test for establishing whether there was an expectation of privacy was enunciated by the United States Supreme Court in the context of federal constitutional interpretation, and has been applied to both criminal and civil cases.

"[T]he Fourth Amendment protects people, not places." The question, however, is what protection it affords to those people. Generally, as here, the answer to that question requires reference to a 'place.' My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' Thus[,] a man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the 'plain view' of outsiders are not 'protected' because no intention to keep them to himself has been exhibited.
*Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). Duncan "never testified whether he believed that his bank would keep his name and address private, nor did he present any evidence from his bank suggesting what level of privacy, if any, it promised its customers." *Duncan*, 572 Pa. at 443, 817 A.2d at 458. Similarly, here, the Office of the Lieu-

opined "that any subjective expectation of privacy that appellant may have had in the name and address information is not an expectation which society would be willing to recognize as objectively reasonable in light of the realities of our modern age." *Id.* at 455–56, 817 A.2d at 465–66. However, our Supreme Court did specifically allow that there could be a reasonable expectation of privacy where an individual has taken "specific action to have his information treated differently and more privately." *Id.*

While it is true that in our modern, technological society, information about individuals may be more easily found, particularly on the internet as evidenced by the author of the majority opinion performing his own internet search,[13] there may be individuals who, for whatever personal reason, have taken action to protect their information. Personal security fears are recognized by society as objectively reasonable; for example, protecting the address of an individual in the witness protection program or a victim of abuse. There may be other reasons to protect personal information as well, such as individuals who have been the victims of identity theft, or are afraid of becoming a victim, and have taken extra precautions to keep personal information off the internet; for example, by renting an apartment (and, therefore, might not be found on Zillow). One significant constitutional deficiency with the statutory scheme of the RTKL is that there is no statutory requirement that the individual whose information is to be disclosed be provided with notice of a RTKL request or be given the right to participate. *See Allegheny County Department of Administrative Services v. A*

*Second Chance, Inc.,* 13 A.3d 1025, 1032 (Pa.Cmwlth.2011) (Section 1101(c) of the RTKL, 65 P.S. § 67.1101(c)(1), "does not allow a person with a direct interest to assume a status in the Open Records proceedings on par with either the request[o]r or the agency.") Without a statutory right to participate in the RTKL proceedings or a right to appeal a determination, an individual is not afforded the opportunity to establish his or her reasonable subjective expectation of privacy. *See Allegheny County,* 13 A.3d at 1032 (Section 1101(c) does not provide a third party with a direct interest a right to appeal the OOR's final determination "as that right is conferred only upon 'a request[o]r or the agency.'").

This due process deficiency in the RTKL, created by the lack of statutorily required notice to and the right to fully participate in the proceedings by the individual whose information will be disclosed, was recently highlighted by our Supreme Court in a case involving the disclosure of the names and home addresses of public school teachers. *Pennsylvania State Education Association ex rel. Wilson v. Commonwealth,* —— Pa. ——, 50 A.3d 1263 (2012) (*PSEA* ). While the main issues in this case before the Supreme Court dealt with questions of jurisdiction and the party status of the OOR, the Court also discussed the privacy interests at stake and the concern that individuals are notified prior to their personal information being disseminated:

> As a threshold matter, Appellants have amply established that—although school employees have (at the very least) a colorable interest in the grant or deni-

---

tenant Governor has not presented any evidence of whether the individual employee, whose home address is being requested, had a subjective expectation of privacy in her information.

**13.** *See Office of the Lieutenant Governor,* 67 A.3d at 130 (citing http://www.zillow.com and http://www.whitepages.com).

al of RTKL requests for their personal address information—the RTKL does not make them parties to the request or the ensuing appeal process. Indeed, affected school employees are not so much as afforded required notice of requests and/or proceedings before the OOR. While the OOR portrays itself as a quasi-judicial tribunal relative to Appellants' interests, it offers an exceptionally weak rejoinder to Appellants' notice-related concerns. In this regard, the OOR merely observes that local agencies such as school districts may adopt rules to provide adequate notice. *See* Brief for the OOR at 9. Indeed, the OOR's position that affected school employees receive adequate process depends on a series of such mere possibilities: each of the some 500 school districts statewide may or may not adopt an individualized notice policy; a school employee whose address is requested may or may not receive notice of the request; a school district may or may not disclose the information to requestors; if a district does not·disclose, and upon a requestor's appeal, the OOR may or may not permit the affected schoolteacher to participate in the proceedings; and the school employee may or may not be aware of any further appeal proceedings in the judiciary.

*Id.* at ——, 50 A.3d at 1274–75 (footnote omitted). Importantly, for the analysis in this case, the Supreme Court did not accept the OOR's argument that *Duncan* had already held that home addresses are not protected by Article I, Sections 1 or 8 of the Pennsylvania Constitution; had it done so, there arguably would have been no reason to remand the case for further proceedings. However, the Supreme Court did remand the case while noting that due process was a prominent concern underlying its decision. *PSEA,* —— Pa. at ——, 50 A.3d at 1277 n. 11. I believe the Supreme Court's opinion in *PSEA* further cautions us against reading *Duncan* as broadly as does the majority.

I also would not read our Supreme Court's recent *per curiam* affirmance of this Court's single judge opinion in *Marin v. Secretary of the Commonwealth,* 41 A.3d 913 (Pa.Cmwlth.2012) (Pellegrini, J.), *aff'd per curiam,* —— Pa. ——, 66 A.3d 250 (2013),[14] as resolving the address issue. *Marin* is a cautionary example of how the separate analyses required under the RTKL and the Pennsylvania Constitution can become muddled. In *Marin,* a candidate for public office argued that Section 910 of the Election Code,[15] requiring a candidate to disclose his personal residence information on his candidate's affidavit, was unconstitutional. Marin confusingly framed his argument as if the RTKL applied to the Election Code. Predictably, "Marin's attempt to apply provisions of the [RTKL] to the Election Code in order to determine what information can be made available to the public is completely meritless as this case does not involve a right-to-know request." *Marin,* 41 A.3d at 915 n. 4. Given these facts, it is not surprising that the opinion ultimately determined that the home address requirement at issue did not violate the right to privacy in that case. The *Marin* decision noted "that there is a compelling reason to require candidates for elected office to provide their home address on their nomination forms as every candidate must be qualified for the position he seeks." *Id.* at 916. That is, similar to *Duncan,* any subjective

---

14. The majority opinion correctly notes that this opinion is not precedential. *Office of the Lieutenant Governor,* 67 A.3d at 130 n. 10.

15. Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 2870.

expectation of privacy that a candidate for public office may have in his home address is not objectively reasonable given residency requirements to run for office and the necessity that the public be informed about those who affirmatively place themselves in the public arena for elective office. Thus, the decision is consistent with an individualized application of the balancing test. Moreover, the Supreme Court's *per curiam* affirmance of *Marin* reflects nothing more than affirming the *order* and *not* the rationale for the holding that Section 910 of the Election Code does not violate the Pennsylvania Constitution.[16] Given our Supreme Court's recent action in *PSEA*, discussed herein, I would exercise considerable caution in expanding the application of the *Marin per curiam* affirmance.

I respectfully believe that it is too soon to ring the death knell of the right to privacy protected by the Pennsylvania Constitution and to sweepingly declare that under no circumstances could any individual prove such a right in his or her home address. While I agree in this modern age that such circumstances might be rare, I cannot say with certainty that they will never exist. Moreover, I am troubled at rendering this sweeping declaration when the individual whose address is being disclosed is not afforded the right, under the RTKL, to receive notice and an opportunity to prove the existence of the constitutional interest before we make our decision.

In this case, the affidavit was not specific enough to meet the personal security exception under the RTKL. In addition, there was no evidence of the individual's subjective expectation of privacy in her address, or of the reasonableness of the expectation, in order to meet the Constitutional two-part test. Although the individual whose address was requested, and who might have been able to make the requisite showing to support either the application of the personal security exception or the violation of her right to privacy, has not been statutorily afforded the right to be heard prior to disclosure of the information, there was no argument that the statute is constitutionally infirm on that basis. I, therefore, am constrained to concur in the result only of the majority opinion.

CONCURRING and DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent from one of the majority's holdings. I would affirm the decision of the Office of Open Records that an e-mail address created by the government for the purpose of transacting governmental business is not a "personal e-mail address" within the meaning of Section 708(b)(6)(i)(A) of the Right-to-Know Law.[1] Had the General Assembly intended otherwise, it would have exempted an "employee e-mail address" instead of "personal e-mail address."

My dissent in this case may appear inconsistent with *Office of the Governor v. Raffle*, 65 A.3d 1105 (Pa.Cmwlth. 2013), in which I joined the majority holding that a

---

16. As recently noted by our Supreme Court, when it "issues a *per curiam* affirmance, '[u]nless we indicate that the *opinion* of the lower tribunal is affirmed *per curiam*, our order is not to be interpreted as adopting the rationale employed by the lower tribunal in reaching its final disposition.'" *In re Stevenson*, 615 Pa. 50, 57 n. 5, 40 A.3d 1212, 1216 n. 5 (2012) (quoting *Commonwealth v. Tilgh-*

*man*, 543 Pa. 578, 589, 673 A.2d 898, 904 (1996) (emphasis in original)). Accordingly, as the Supreme Court's *per curiam* affirmance of *Marin* only affirmed the order, the *per curiam* affirmance did not adopt this Court's rationale in *Marin*.

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

personal cellphone number is exempt from disclosure. However, there is an important difference between a government e-mail address and a personal cellphone number, even one paid for by the government. The government e-mail stays with the government, and it cannot be used by the employee after he leaves government service. That is not the case with a personal cellphone number that may have been established before the employee entered government and can follow that employee into retirement from government service.

Otherwise, I join the majority opinion.

Judge SIMPSON joins in this Concurring and Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY Judge McCULLOUGH.

I agree with the Majority that the request of Daniel Mohn (Requester) seeking government e-mail addresses from the Lieutenant Governor is exempt from disclosure pursuant to section 708(b)(6)(i)(A) of the Right–to–Know–Law (RTKL), Act of February 14, 2008, P.L. 6, 65 P.S. § 67.708(b)(6)(i)(A), even though Requester would clearly have the ability to request e-mails from the same accounts under the RTKL, subject to any statutory exemptions.[1]

I diverge from the Majority's holding that there is no right to privacy implicated when the home address of an employee of the Lieutenant Governor's office is disclosed to the public. In *Pennsylvania State Education Association ex rel. Wilson v. Office of Open Records*, 4 A.3d 1156 (Pa.Cmwlth.2010) (en banc), *vacated and remanded by* —— Pa. ——, 50 A.3d 1263 (2012) ("*PSEA*"), I authored a dissenting opinion expressing the view that the right to privacy emanating from the "personal security" exception of the former Right to Know Act of 1957 (Right to Know Act)[2] continues uninterrupted and in full force and effect to the new "personal security" exemption of the current RTKL. *PSEA*, 4 A.3d at 1171–74 (McCullough, J. dissenting). I maintain this position today.

As this Court has pointed out, the former Right to Know Act and its successor, the RTKL, both contain the term "personal security" and also an exception dubbed the "personal security exemption." However, the language enclosing the term "personal security" in the former Right to Know Act was different from that of the RTKL. The personal security exemption of the former Right to Know Act excluded a record that "would operate to the prejudice or impairment of a person's reputation or personal security." Section 1(2) of the prior Right to Know Act, formerly 65 P.S. § 66.1(2). On the other hand, the RTKL currently exempts a record that "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." Section 708(b)(1)(ii) of the RTKL, 65 P.S. § 67.708(b)(1)(ii).

Following this Court's decision in *PSEA*, we had the opportunity in *Delaware County v. Schaefer*, 45 A.3d 1149 (Pa.Cmwlth. 2012) (en banc), to discern any distinction between the two provisions. Utilizing the

---

1. Additionally, although the issue was not raised by the parties, I seriously question whether an e-mail address, standing alone, is a "record" under section 102 of the RTKL, 65 P.S. § 67.102. In my view, an e-mail address does not "document a transaction or activity of an agency"—rather, it is a collection of letters, symbols, and/or numbers that are ascribed to a person for communicative purposes.

2. Act of June 21, 1957, P.L. 390, *formerly* 65 P.S. §§ 66.1–66.9, repealed by Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

canons of statutory construction, we interpreted the term "personal security" in the RTKL in light of its novel surrounding language. In doing so, we observed that "physical harm" and "personal security" were ideas disjunctive in nature and that our Legislature intended "distinct interests by each term." *Schaefer*, 45 A.3d at 1154. This Court then isolated and construed the phrase "personal security" as conferring upon an individual a broad-based and diverse right—specifically one that "comprise[s] innumerable rights, including the right to privacy and confidentiality, and the right to be secure in one's possessions, monies, investments and benefits, and the freedom from identity theft." *Id.* at 1155. Importantly, we stated that "because the term 'personal security' was used in both the former and current RTKL, prior judicial authority is controlling in the interpretation of that term." *Id.*

*Schaefer* establishes that the right of privacy is *subsumed* in the term "personal security" under the current RTKL. *Schaefer* further provides that case law interpreting the former Right to Know Act has attached significant legal meaning to the phrase "personal security" and that this meaning is binding or controlling authority when construing the RTKL.

On a variety of occasions, this Court has examined the former Right to Know Act and prohibited the disclosure of home addresses on the ground that the privacy right and personal security of the individual trumped any need for disclosure. *See Goppelt v. City of Philadelphia Department of Revenue*, 841 A.2d 599 (Pa. Cmwlth.2004) (collecting cases). In *Penn. State University v. State Employees' Retirement Board*, 594 Pa. 244, 260, 935 A.2d 530, 539 (2007), our Supreme Court examined the former Right to Know Act and explicitly recognized that an individual's

home address concerns a "basic right to privacy" for purposes of the personal security exemption. *Id.* ("With regard to the right to privacy in one's social security number, telephone number *or* home address, we would have great difficulty concluding that the public interest asserted here outweighs these basic rights to privacy.") (emphasis supplied). Nearly a year later, in *Tribune–Review Publishing Company v. Bodack*, 599 Pa. 256, 961 A.2d 110 (2008), the court surveyed previous case law and reaffirmed its previous plurality decision in *Sapp Roofing Company v. Sheet Metal Workers' Internal Association*, 552 Pa. 105, 713 A.2d 627 (1998). In so doing, our Supreme Court not only concluded that there exists a privacy right in a home address, but also explained that this right is inexorably tied to the "personal security" of employees. *Bodack*, 599 Pa. at 265–66, 961 A.2d at 116 (identifying home addresses as personal information, which if revealed, could "potentially impair the personal security of the ... employees"), and *Id.* at 268, 961 A.2d at 116–17 (concluding that the privacy right in a home address is "pertinent to a person's personal security").

Under *Bodack* the term "personal security" in the former Right to Know Act encompassed, and was indeed inseparable from, the privacy right that an individual has in his or her home address. Pursuant to *Schaefer*, *Bodack*'s interpretation of "personal security" is controlling and is transposed to the RTKL; consequently, the phrase "personal security" in the RTKL also includes a right of privacy that protects against the unwarranted disclosure of a home address. For this reason, I am unable to share the Majority's opinion that the current "personal security" exception of the RTKL does not contain a cognizable privacy right, particularly one that is

associated with a home address.[3]

In reaching my position, I recognize that in contrast to the former Right to Know Act, the current formulation of the RTKL requires that the privacy right in an individual's address must be one that is "reasonably likely to result in a substantial and demonstrable risk." 65 P.S. § 67.708(b)(1)(ii). While this appears to create a new test upon which to assess the value or nature of a privacy right, the Supreme Court in *Bodack* observed that:

> there are certain types of information whose disclosure, by their very nature, would operate to the prejudice or impairment of a person's privacy, reputation or personal security, and thus intrinsically possess a palpable weight that can be balanced by a court against those competing factors that favor disclosure. Private telephone numbers are one such type.

*Bodack*, 599 Pa. at 265, 961 A.2d at 115–16.

Consistent with *Bodack*, I believe that the basic privacy right in a home address carries sufficient weight in the calculus that any infringement thereof could constitute a "substantial and demonstrable risk" to the personal security of an individual.

However, and unfortunately, the record in this case does not demonstrate that the individual whose information is to be disclosed has had the opportunity to intervene or has otherwise been given a chance to prove a "substantial and demonstrable risk." I believe that the Court has an independent duty to ascertain the effect of its orders on the rights of individuals not privy to an action and to inquire as to whether the interests of these absent persons are being adequately represented by the parties. In any event, because this is a RTKL appeal, this Court is entitled to the broadest scope of review and has the authority to allow an interested party/individual to supplement the evidentiary record when necessary. *Bowling v. Office of Open Records*, 990 A.2d 813, 818 (Pa. Cmwlth.2010) (en banc) *appeal granted in part*, 609 Pa. 265, 15 A.3d 427 (2011) (concluding that under the RTKL this Court "has the inherent authority to take reasonable measures to ensure that a record sufficient for judicial review exists."). *See Pennsylvania Housing Finance Agency v. Ali*, 43 A.3d 532, 534 n. 7 (Pa.Cmwlth.2012); *Office of the Budget v. Office of Open Records*, 11 A.3d 618, 620 n. 6 (Pa. Cmwlth.2011). Pursuant to this authority, I would vacate and remand the matter to the Office of Open Records with the express purpose of permitting the affected individual to submit an affidavit concerning the privacy right he has in his home address. Accordingly, and in this regard, I respectfully dissent.

---

**3.** Even if the personal security exemption did not include a statutorily-based right to privacy, I agree with my esteemed colleague, Judge Cohn Jubelirer, that such a right is implied in the RTKL because it is guaranteed by the Pennsylvania Constitution.