The PENNSYLVANIA STATE EDUCATION ASSOCIATION, By Lynne WILSON, General Counsel, William McGill, F. Darlene Albaugh, Heather Kolanich, Wayne Davenport, Frederick Smith, Jamie McPoyle, Brianna Miller, Valerie Brown, Janet Layton, Korri Brown, Al Reitz, Lisa Lang, Brad Group and Randall Sovisky, Petitioners

v.

COMMONWEALTH of Pennsylvania, Department of Community and Economic Development, Office of Open Records, and Terry Mutchler, Executive Director of the Office of Open Records, Respondents

Pennsylvania Association of School Retirees, Ureneus V. Kirkwood, John B. Nye, Stephen M. Vak, and Richard Rowland and Simon Campbell, Intervenors.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2014.
Decided Feb. 17, 2015.

77 P.S. § 513.

Richard E. Burridge and Thomas W. Scott, Harrisburg, for petitioners.

Charles R. Brown, Chief Counsel, Harrisburg, for respondents Office of Open Records and Terry Mutchler.

Emily H. Bensinger, Harrisburg, William W. Warren, Jr., Harrisburg, and W. James Young, Springfield, VA, for intervenors.

BEFORE: DAN PELLEGRINI, President Judge, and BERNARD L. McGINLEY, Judge, and BONNIE BRIGANCE LEADBETTER, Judge, and RENÉE COHN JUBELIRER, Judge, and P. KEVIN BROBSON, Judge, and PATRICIA A. McCULLOUGH, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge COHN JUBELIRER.

Presently before this Court for disposition in our original jurisdiction are: (1) the

Office of Open Records'[1] (OOR) and the Pennsylvania Association of School Retirees[2] (PASR) Partial Motion for Summary Judgment as to Counts I, II, and III of Petitioners' First Amended Petition for Review (Amended Petition); (2) OOR's and PASR's Amended Partial Motion for Summary Judgment as to Counts IV and V of the Amended Petition; and (3) Petitioners' Cross Motion for Summary Judgment.[3]

## I. BACKGROUND

### A. Proceedings between 2009–2012

This matter has a complicated history. Petitioners filed a Petition for Review in the Nature of a Complaint in Equity for Injunctive Relief (Petition) on July 23, 2009 seeking a judgment, pursuant to the Declaratory Judgments Act,[4] declaring the home addresses of public school employees to be exempt from disclosure under the Right–to–Know Law[5] (RTKL) and enjoining the OOR from permitting such disclosure.[6] Count I of the Petition asserts that the RTKL should be interpreted to protect home addresses from disclosure because any other interpretation would violate a constitutional right to privacy. (Petition ¶¶ 71–85.) The Petition avers that the personal security exception,[7] the personal information exception,[8] and the "other laws or decisions" exception[9] of the RTKL can be interpreted as protecting home addresses from disclosure. (Petition ¶¶ 82–84.) Count II of the Petition seeks, in the alternative, a declaration that any provision of the RTKL that requires disclosure of the home addresses of public school employees violates the constitutional right to privacy emanating from Article 1, Sections 1[10] and 8[11] of the Pennsylvania Con-

---

1. Respondents will be collectively referred to as "the OOR."

2. Intervenor PASR and its four officers—Ureneus V. Kirkwood, John B. Nye, Stephen M. Vak, and Richard Rowland will be collectively referred to as "PASR."

3. Pursuant to Pennsylvania Rule of Appellate Procedure 1532, "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Pa. R.A.P. 1532(b). Rule 1532 "provides similar relief to that envisioned under the [Pennsylvania] Rules of Civil Procedure relating to summary judgment." *Unified Sportsmen of Pennsylvania ex rel. their Members v. Pennsylvania Game Commission*, 18 A.3d 373, 382 (Pa. Cmwlth.2011). We "may grant summary relief when a party's right to judgment is clear and no material issues of fact are in dispute." *Id.*

4. 42 Pa.C.S. §§ 7531–7541.

5. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

6. Simon Campbell, Requester, also intervened in this matter, and has filed a brief in support of the OOR's and PASR's position and a brief in opposition to Petitioners' position. There . are also several *amici curiae;* however, only two have filed briefs with respect to the current motions before this Court. The Pennsylvania NewsMedia Association and the Pennsylvania Freedom of Information Coalition have filed briefs in support of the OOR's position with respect to Counts I, II and III of the Amended Petition.

7. Section 708(b)(1)(ii) of the RTKL, 65 P.S. § 67.708(b)(1)(ii).

8. Section 708(b)(6)(i)(A) of the RTKL, 65 P.S. § 67.708(b)(6)(i)(A).

9. Section 102 of the RTKL, 65 P.S. § 67.102.

10. Pa. Const. art. I, § 1. Article 1, Section 1, Inherent rights of mankind, provides:

 All men are born and equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness. *Id.*

stitution and is unenforceable. (Petition ¶¶ 87–89.) Count III seeks injunctive relief. (Petition ¶¶.91–108.)

On July 28, 2009, this Court granted Petitioners' "Application For Relief Seeking A Preliminary Injunction."[12] On appeal, our Supreme Court affirmed without prejudice to any party's right to appeal this Court's final disposition of this matter. *Pennsylvania State Education Association ex rel. Wilson v. Commonwealth,* 606 Pa. 638, 2 A.3d 558 (2010) (*PSEA I* ).

The OOR filed preliminary objections (POs) seeking to have the Petition dismissed for lack of jurisdiction and failure to state a cause of action. On September 24, 2010, this Court sustained the POs and dismissed this case without prejudice, holding that the appropriate defendant in this action is not the OOR but, rather, the school districts that hold the records and personal information sought to be protected from disclosure. *Pennsylvania State Education Association ex rel. Wilson v. Commonwealth,* 4 A.3d 1156, 1165–66 (Pa. Cmwlth.2010) (*PSEA II* ) (Pellegrini, J., dissenting; McCullough, J., dissenting).

In the absence of a Commonwealth agency as a defendant, this Court held that it lacked jurisdiction. *Id.* at 1166. On appeal, however, the Supreme Court vacated this Court's decision and remanded for further proceedings. *Pennsylvania State Education Association ex rel. Wilson v. Commonwealth,* 616 Pa. 491, 50 A.3d 1263 (2012) (*PSEA III* ) (Castille, C.J., concurring (Baer, J., joined); Todd, J., concurring; Eakin, J., dissenting). The Supreme Court agreed with Petitioners' "central position that the OOR may fairly be regarded as an indispensable party to their efforts to secure a just, timely, and meaningful judicial resolution of their claims." *Id.* at 1274–75.

### B. Proceedings in 2013–2014

After remand, the parties filed Answers and New Matter to the Petition. On February 25, 2013, the OOR filed a Motion for Summary Judgment and, upon application, PASR joined in OOR's motion. The primary basis for the OOR's Motion for Summary Judgment is this Court's decisions holding that there is no constitutional right

---

**11.** Pa. Const. art. I, § 8. Article 1, Section 8, Security from searches and seizures, provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

*Id.*

**12.** This Court's July 28, 2009 order: (1) stayed the release of the home addresses of all public school employees until further order of this Court; (2) enjoined the OOR from directing the release of the home addresses of public school employees pursuant to the RTKL until further order of this Court; and (3) directed the OOR to take all reasonable steps necessary to notify public school districts of the Commonwealth of the existence of this litigation and that the release of employee

home addresses is stayed until further order of this Court. An opinion in support of this Court's July 28, 2009 order was filed August 6, 2009. *See Pennsylvania State Education Association ex rel. Wilson v. Commonwealth,* 981 A.2d 383 (Pa.Cmwlth.2009) (single judge op.). After a hearing on December 5, 2013, by Memorandum Opinion and Order filed March 25, 2014, this Court denied PASR's application to modify this Court's July 28, 2009 injunction as to PASR and denied the cross-application of OOR to vacate the injunction. *See Pennsylvania State Education Association ex rel. Wilson v. Commonwealth* (Pa. Cmwlth., No. 396 M.D. 2009, filed March 25, 2014) (single judge op.). However, we clarified our July 28, 2009 order and limited the preliminary injunction "to only those records maintained by public school districts, which contain the home addresses of public school employees." *Id.,* slip op. at 10.

to privacy in one's home address under the Pennsylvania Constitution. *See Marin v. Secretary of the Commonwealth,* 41 A.3d 913, 915 (Pa.Cmwlth.2012) (Per Curiam), *aff'd,* 620 Pa. 56, 66 A.3d 250 (2013); *Office of Lieutenant Governor v. Mohn,* 67 A.3d 123 (Pa.Cmwlth.2013) (en banc) (Cohn Jubelirer, J., concurring; Leavitt, J., concurring and dissenting (joined by Simpson, J.); McCullough, J., concurring and dissenting); and *Office of Governor v. Raffle,* 65 A.3d 1105 (Pa.Cmwlth.2013) (en banc) (Cohn Jubelirer, J., concurring; McCullough, J., concurring and dissenting). Petitioners' filed an Answer to the OOR's/ PASR's Motion for Summary Judgment.[13]

On May 22, 2013, Petitioners filed a Motion to Amend and the Amended Petition. Petitioners sought leave to amend the Petition to add Counts IV and V. Count IV avers that the RTKL violates the fundamental constitutional right to due process because it does not provide affected individuals with: (1) notice that a request for personal information has been received; (2) an opportunity to be heard; and (3) party status, thereby depriving them of any opportunity to challenge an agency decision to release information through an appeal. (Amended Petition ¶¶ 110–20.) Therefore, Count IV requests "an [o]rder declaring that to the extent the [RTKL] requires the disclosure of the home address of a public school employee without providing procedural due process, ... [the RTKL] is unconstitutional ... and unenforceable." (Amended Petition, Wherefore Clause, Count IV.)

Count V seeks a declaration that, as currently administered by the OOR, the RTKL is fatally flawed and unenforceable because Section 708(b)(1)(ii) purports to create a personal security exception to the disclosure of personal information without any mechanism to apply that exception to protect an affected individual from harm. (Amended Petition at ¶¶ 122–25.) Count V avers that the OOR has the authority to promulgate regulations that will be binding on agencies and that the OOR has failed to implement or develop some rational mechanism to ensure that individuals have advance notice before the release of their personal data and the opportunity to challenge the release as exempt pursuant to the personal security exception of the RTKL. (Amended Petition ¶¶ 128–31.) Petitioners "request this [C]ourt to enjoin the release of the home addresses of public school employees until the OOR establishes a uniform, structured and consistent mechanism ... to [e]nsure that individuals who may be affected by a release of their personal data" will be afforded procedural due process. (Amended Petition, Wherefore Clause, Count V.)

By order of May 29, 2013, this Court stayed disposition of the OOR's and PASR's Motion for Summary Judgment pending disposition of the Motion to Amend. By Memorandum Opinion and Order filed July 30, 2013, this Court: (1) granted Petitioners' Motion to Amend; (2) ordered that the Amended Petition be accepted for filing; (3) ordered that the OOR's and PASR's Motion for Summary Judgment be treated as a Partial Motion for Summary Judgment as to Counts I, II, and III of the Amended Petition; (4) continued the stay of the disposition of the OOR's and PASR's now Partial Motion for Summary Judgment imposed by this Court's May 29, 2013 Order until further

---

**13.** By Memorandum Opinion and Order filed July 30, 2013 this Court granted, in part, the OOR's Motion to Strike Petitioners' answer and ordered that the proposed order attached to Petitioners' answer be stricken. *See Penn-* *sylvania State Education Association ex rel. Wilson v. Commonwealth* (Pa.Cmwlth., No. 396 M.D. 2009, filed July 30, 2013) (single judge op.).

order of this Court; and (5) directed that a responsive pleading to Counts IV and V only of the Amended Petition be filed within 30 days. *See Pennsylvania State Education Association ex rel. Wilson v. Commonwealth* (Pa.Cmwlth., No. 396 M.D. 2009, filed July 30, 2013) (single judge op.).

Responsive pleadings were filed as ordered. Thereafter, upon application, this Court lifted the stay of the OOR's and PASR's Partial Motion for Summary Judgment as to Counts I, II, and III of the Amended Petition (First Partial Motion). OOR then filed a Partial Motion for Summary Judgment as to Counts IV and V of Petitioners' Amended Petition and later, with leave of this Court, filed an Amended Partial Motion for Summary Judgment (Amended Partial Motion). PASR has joined OOR's Amended Partial Motion. Petitioners have also filed a Cross Motion for Summary Judgment (Cross Motion). Answers to all three motions for summary judgment were filed.

## II. PENDING MOTIONS

### A. OOR's/PASR's First And Amended Partial Motions

The basis for the OOR's and PASR's First Partial Motion seeking summary judgment as to Counts I, II and III of the Amended Petition is three fold: (1) there is no legal basis for Petitioners' Amended Petition since "there is no constitutional right to privacy in one's home address under the Pennsylvania Constitution," based upon this Court's decisions in *Marin, Mohn,* and *Raffle;* (2) "to the extent that a right to privacy protects a home address from public knowledge, the named Petitioners waived such a right by publishing their home addresses in paragraphs 5–18 of the Petition"; and (3) "to the extent that a right to privacy protects a home address from public disclosure, the issue is moot as to the named Petitioners since

they publically released their addresses in paragraphs 5–18 of the Petition." (First Partial Motion ¶ 10.)

The OOR's and PASR's Amended Partial Motion seeks summary judgment as to Counts IV and V of the Amended Petition for four reasons: (1) the OOR lacks the authority to regulate the provision of procedural due process by agencies during the RTKL request stage; (2) the RTKL provides for procedural due process at the request stage; (3) because the RTKL provides for procedural due process during the appeal stage, the OOR does ensure that procedural due process occurs during the appeals process; and (4) Petitioners failed to allege any cognizable harm in the purported lack of procedural due process.

### B. Petitioners' Cross Motion

Petitioners seek summary judgment as to all Counts of the Amended Petition for the following reasons: (1) home addresses of public school employees are not public records subject to disclosure pursuant to the "risk of physical harm" and "risk to personal security" exceptions of the RTKL; (2) the home addresses are protected from disclosure pursuant to the right to privacy established by the Pennsylvania Constitution; (3) the RTKL violates the constitutional right to due process because there is no notice and opportunity to be heard before personal data is released; and (4) enforcement of the RTKL permits disclosure of personal information without any mechanism to provide due process to affected individuals whose information is being disclosed.

## III. DISCUSSION

 First and foremost, we recognize that the RTKL is remedial in nature and "is designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of

public officials, and make public officials accountable for their actions." *Pennsylvania State Police v. McGill*, 83 A.3d 476, 479 (Pa.Cmwlth.2014). Thus, the RTKL must be construed to maximize access to public records that are in an agency's possession. In keeping with the RTKL's goal of promoting government transparency and its remedial nature, the exceptions to disclosure of public records must be narrowly construed. *Id.*

The RTKL expressly provides that a record is exempt from access by a requester if the disclosure of the record "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an **individual**." Section 708(b)(1)(ii) of the RTKL, 65 P.S. § 67.708(b)(1)(ii) (emphasis added). The salient issue before this Court is whether the RTKL deprives an individual, whose personal information may be exempt from disclosure pursuant to Section 708(b)(1)(ii), of procedural due process by not providing a mechanism to ensure that an affected individual has notice that his or her personal data has been requested and an opportunity to demonstrate that his or her personal security may be at risk if the requested information is disclosed.[14]

Although the OOR and PASR urge this Court to interpret certain sections of the RTKL as providing procedural due process, our Supreme Court in *PSEA III* specifically recognized the absence of procedural due process to third parties with a direct interest in the information being requested, such as Petitioners in this matter. *PSEA III*, 50 A.3d at 1277. In holding that Petitioners could proceed with this

declaratory judgment action against the OOR, the Supreme Court explained that due process was a prominent concern underlying its approach. *Id.* at 1277 & n. 11. The Supreme Court opined that Petitioners

have amply established that—although school employees have (at the very least) a colorable interest in the grant or denial of RTKL requests for their personal address information—the RTKL does not make them parties to the request or the ensuing appeal process. Indeed, affected school employees are not so much as afforded required notice of requests and/or proceedings before the OOR. While the OOR portrays itself as a quasi-judicial tribunal relative to [Petitioners'] interests, it offers an exceptionally weak rejoinder to [Petitioners'] notice-related concerns. In this regard, the OOR merely observes that local agencies such as school districts may adopt rules to provide adequate notice. *See* Brief for the OOR at 9. Indeed, the OOR's position that affected school employees receive adequate due process depends on a series of such mere possibilities: each of the some 500 school districts statewide may or may not adopt an individualized notice policy; a school employee whose address is requested may or may not receive notice of the request; a school district may or may not disclose the information to request[e]rs; if a district does not disclose, and upon a request[e]r's appeal, the OOR may or may not permit the affected schoolteacher to participate in the proceedings; and the school employee may or may not be

---

14. It is axiomatic that "[n]otice is the most basic requirement of due process." *Pennsylvania Coal Mining Association v. Insurance Department*, 471 Pa. 437, 370 A.2d 685, 692 (1977). Absent notice, a party "cannot take

advantage of any of the other procedural safeguards made available to" that party. *Id.* A party must first be notified in order for that party, whose rights are affected, to be entitled to be heard. *Id.*

aware of any further appeal proceedings in the judiciary.

*Id.* at 1274–75 (footnote omitted).

With respect to the appeal proceedings before the OOR, the Supreme Court noted that Petitioners

> cannot as of right intervene in or appeal from proceedings before the OOR, regardless of the strength of their interest in the subject of such proceedings. *See* 65 P.S. §§ 67.1101(c), 67.1301(a). At the OOR level, [Petitioners'] participation in this process is subject to the discretion of the OOR appeals officer, who may or may not permit [Petitioners] to submit information or appear at a hearing and present evidence. *See* 65 P.S. § 67.1101(c). This participation is further limited by the fact that the appeals officer may not, by statute, permit such participation if a hearing has already been held. *See* 65 P.S. § 67.1101(c)(2)(i). In addition, the RTKL restricts the time period in which [Petitioners] may seek to provide information to the OOR appeals officer to "within 15 days following receipt of actual knowledge of the appeal but no later than the date the appeals officer issues an order," 65 P.S. § 67.1101(c), despite the fact that notice of any appeal from an OOR adjudication must be provided only to "an agency, the requester and the Office of Open Records or designated appeals officer." 65 P.S. § 67.1303(a). Furthermore, the OOR, by statute, is not required to conform to the notice and hearing provisions generally applicable under the administrative agency law. *See* 65 P.S. § 67.1309.

*Id.* at 1275 n. 8. The Supreme Court opined further that:

> The OOR, as the agency charged with the implementation of the open-records scheme, has settled on a construction which permits the disclosure of personal information of school employees without any requirement that notice be provided to such individuals. Although there are hundreds of school districts in Pennsylvania with tens of thousands of employees, it is the OOR's position that the notice issue should nevertheless be addressed only at the local level, despite the OOR's statutory authority to "promulgate regulations relating to appeals involving a Commonwealth agency or local agency." 65 P.S. § 67.504(a).
>
> **Plainly, the RTKL, as presently implemented by the OOR, does not provide public school employees with a reliable administrative or judicial method by which to seek redress for action that they believe violates the statutory scheme and/or their constitutional rights.**

*Id.* at 1275–76 (emphasis added).

The RTKL provisions have not been amended since the Supreme Court issued its 2012 decision in *PSEA III;* therefore, the Supreme Court's conclusion that the RTKL does not "provide public school employees with a reliable administrative or judicial method by which to seek redress for action that they believe violates the statutory scheme and/or their constitutional rights" remains undisturbed. *Id.* at 1275–76. Here, Petitioners assert, *inter alia*, in support of the Cross Motion that enforcement of the RTKL permits disclosure of personal information without any mechanism to provide due process to affected individuals whose information is being disclosed. In other words, the RTKL's lack of a mechanism to ensure that an affected individual has notice and an opportunity to be heard in order to demonstrate that his or her personal information may be exempt from disclosure pursuant to Section 708(b)(1)(ii), otherwise

known as the personal security exception, violates the statutory scheme.[15] We agree.

■■■ While the purpose of the RTKL is to ensure government transparency, the General Assembly did not provide for carte blanche access by a requester to all public records in possession of a government agency. The General Assembly's inclusion of several exceptions in the RTKL that exempt certain records from access by a requester reflects a clear legislative intent to protect specific types of information from disclosure and to also protect individuals who may be harmed by the disclosure of certain information. As stated previously, the exceptions include the personal security exception set forth in Section 708(b)(1)(ii), which exempts a record from access if the disclosure of the record "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an **individual**." 65 P.S. § 67.708(b)(1)(ii) (emphasis added). However, the RTKL places the burden of proving, by a preponderance of the evidence, that a record is exempt from access under this exception on the government agency from which the record is requested. Section 708(a), 65 P.S. § 67.708(a). There is no provision in the RTKL for the individual that the personal security exception is designed to protect to be given notice at the request stage and an opportunity to demonstrate prior to disclosure that access to a requested record should be denied by the government agency pursuant to Section 708(b)(1)(ii) of the RTKL. The RTKL, by its terms, leaves to chance that the government agency would be knowledgeable about an affected individual's situation and be able to prove, by a preponderance of the evidence, that an affected individual's information is exempt from access pursuant to the personal security exception rather than disclosing the information.

Moreover, pursuant to Section 1101(a)(1) of the RTKL, only the requester has a right of appeal to the OOR if a request for a record is denied.[16] A person with a direct interest neither has a right to appeal to the OOR nor the right to intervene in the requester's appeal. Nor does a person with a direct interest have the right to appeal as an aggrieved party from a grant by an agency of a RTKL request for his or her personal address information. Section 1101(c) of the RTKL only provides discretionary and conditioned participation by an affected individual with a direct interest at the OOR appeal stage.[17]

---

**15.** We note that the General Assembly is considering amending the RTKL to clarify their intent regarding notice before releasing home addresses. Senate Bill No. 444, which was referred to the House of Representatives on September 25, 2014, proposed amending Section 707 of the RTKL (Production of certain records), 65 P.S. § 67.707, to include a new subsection (E) that provides as follows:

(E) Home Address.—If a request includes a home address of an employee of the agency, the agency must notify the subject of the request at least 14 days prior to release of the record. If the subject of the request notifies the agency that the exception under Section 708(b)(1)(ii) applies, the agency shall determine if the home address shall be withheld.

S.B. 444, 2013–2014 Session (Pa.2014).

**16.** 65 P.S. § 67.1101(a)(1). Section 1101(a)(1) provides, in relevant part, that a requester may file an appeal with the OOR from a denial of the requester's written request for access to a record within 15 business days of the mailing date of the agency's response to the written request. *Id.*

**17.** 65 P.S. § 67.1101(c). Section 1101(c) provides:

(c) Direct interest.—
(1) A person other than the agency or requester with a direct interest in the record subject to an appeal under this section may, within 15 days following receipt of actual knowledge of the ap-

▇▇▇▇ This lack of procedural due process prior to granting access to a record essentially eviscerates the General Assembly's intent to protect an individual from the risk of personal harm or risk to his or her personal security that may occur by the disclosure of such a record. Accordingly, this lack of due process violates the statutory scheme of the RTKL.[18] As such, we declare that an agency, as defined in the RTKL, is prohibited from granting access to an individual's personal address information without first notifying the affected individual and providing that affected individual with an opportunity to demonstrate that disclosure of the requested information should be denied pursuant to the personal security exception as set forth in Section 708(b)(1)(ii) of the RTKL.[19,20] We further declare that the OOR is pro-

> peal but no later than the date the appeals officer issues an order, file a written request to provide information or to appear before the appeals officer or to file information in support of the requester's or agency's position.
> (2) The appeals officer may grant a request under paragraph (1) if:
> (i) no hearing has been held; the appeals officer has not yet issued its order; and
> (ii) the appeals officer believes the information will be probative.
> (3) Copies of the written request shall be sent to the agency and the requester.
>
> *Id.*

18. Like the Dissent, we believe it is important not to "frustrate the purposes of the RTKL and take away from the agencies' ability to provide essential services." *Pennsylvania State Education Association ex rel. Wilson v. Commonwealth*, 110 A.3d 1076, 1092 (Pa. Cmwlth.2015) (Pellegrini, P.J., dissenting). The General Assembly chose to include a personal security exception in the RTKL recognizing that personal safety need not be sacrificed while also meeting the important goal of providing transparency into government records and actions. Our holding only provides for an employee to have notice and an opportunity to assert the personal security exception if a RTKL request seeks that employee's home address. Without notice, there is no opportunity for an employee to provide the proof that the Dissent states is lacking. Once an affected employee receives notice, it will be the employee's responsibility to come forward with evidence that his or her personal security will be at risk if the agency discloses his or her home address.

19. The OOR and PASR argue that, because this Court held in *Mohn* and *Raffle* that there is no constitutional right to privacy in one's home address, public school employees have no right to notice and an opportunity to be heard before their personal address information is disclosed pursuant to a RTKL. However, as stated herein, the salient analysis here is not based on a constitutional right to privacy, but examines whether the RTKL's inclusion of a personal security exception entitles an affected individual to procedural due process before certain information is disclosed by a government agency. We also note that, while this Court's decisions in *Mohn* and *Raffle* were based, in part, on our Supreme Court's decision in the criminal case *Commonwealth v. Duncan*, 572 Pa. 438, 817 A.2d 455, 459 (2003), the Supreme Court did not hold in *Duncan* that an individual would never have a constitutionally protected expectation of privacy in his or her home address. The Supreme Court pointed out that, "[i]n determining the scope of protection afforded under Article I, Section 8" of the Pennsylvania Constitution, it "employs the same two-part test employed by the United States Supreme Court to determine the sweep of the Fourth Amendment of the U.S. Constitution." *Id.* at 463. " 'That test requires a person to (1) have established a subjective expectation of privacy and (2) have demonstrated that the expectation is one that society is prepared to recognize as reasonable and legitimate.' " *Id.* (quoting *Commonwealth v. Gordon*, 546 Pa. 65, 683 A.2d 253, 256 (1996)). The Supreme Court held that the appellant in *Duncan* did not present any evidence to show that he harbored a subjective expectation of privacy in his home address or that he took any steps to keep this information private. *Id.* at 464. The Supreme Court explained that "[a]n individual's name and address, **by themselves,** reveal nothing about one's personal, private affairs." *Id.* at 465 (emphasis added). The Supreme Court further opined that where an individual "takes **no specific action** to have his information treated differently and more privately[,]" he "cannot reasonably expect that his identity and home address will re-

hibited from granting access to personal address information of an individual who objected to the disclosure of such information pursuant to the personal security exception set forth in Section 708(b)(1)(ii) of the RTKL without first permitting that individual to intervene as of right in an appeal from an agency's denial of a requester's request for access to such information.

Accordingly, we will deny the OOR's and PASR's Amended Partial Motion and grant Petitioners' Cross Motion with respect to Counts IV and V of the Amended Petition. We now turn to the parties' motions seeking summary judgment with respect to Counts I, II, and III of the Amended Petition.

In support of the First Partial Motion, the OOR and PASR argue that our Court is bound by this Court's decisions in *Mohn* and *Raffle,* holding that there is no constitutional right to privacy in one's home address under the Pennsylvania Constitution; therefore, we must apply the doctrine of *stare decisis* and grant summary judgment in favor of the OOR with respect to Counts I, II and III of the Amended Petition.[21] In response, Petitioners recognize our holding in *Mohn* and *Raffle* and that a majority of this Court would have to overturn these decisions in order for Petitioners to prevail on Counts I, II, and III. However, Petitioners assert that they are not waiving their arguments for a contrary holding in the hopes that the Pennsylvania Supreme Court will hold in their favor on appeal. As such, Petitioners argue extensively in their principal brief and reply brief that there is a constitutional right to privacy in both the Pennsylvania Constitution and the RTKL protecting home addresses from general disclosure under the RTKL.

In accordance with our previous decisions in *Mohn* and *Raffle,* as recognized by

main secret." *Id.* at 466 (emphasis added). Accordingly, where one demonstrates that he or she has taken specific action to have his or her information, such as a home address, treated differently and more privately and the expectation of privacy in the information is one that society recognizes as reasonable and legitimate, then that person's constitutionally-protected expectation of privacy cannot be foreclosed as a matter of law. It would seem that, whether a person has a right to privacy in his or her home address vis-à-vis governmental disclosure, or a protectable interest in its disclosure, might, on occasion, involve a more nuanced inquiry. *See, e.g., United States v. Jones,* —— U.S. ——, ——, 132 S.Ct. 945, 957, 181 L.Ed.2d 911 (2012) (Sotomayor, J., concurring) (recognizing that in wrestling with the concept of privacy in the digital age, "it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties ... whatever the societal expectations, they [sic] can attain constitutionally protected status only if our Fourth Amendment jurisprudence ceases to treat secrecy as a prerequisite for privacy").

**20.** Our holding here is consistent with our prior decision in *Pennsylvania Gaming Control Board v. Office of Open Records,* 48 A.3d 503, 513–14 (Pa.Cmwlth.2012), *rev'd on other grounds,* —— Pa. ——, 103 A.3d 1276 (2014), where we vacated a final order of the OOR and remanded the matter for the OOR to consider whether financial data submitted to the Gaming Board by third parties was exempt from disclosure. We held that the third parties, who were applicants for gaming licenses, had an interest in whether their financial data should be disclosed, which the Gaming Board did not consider. *Id.* at 513. We stated that the "Gaming Board did not have the right or authority to waive applicants' interest in keeping their application information confidential." *Id.* Thus, we have previously recognized that procedural due process must also be afforded where the disclosure of other types of information sought pursuant to the RTKL may impact a third-party.

**21.** Requester has filed a brief in support of the OOR's and PASR's position and his arguments on this issue mirror those of the OOR and PASR.

Petitioners, we grant the OOR's and PASR's First Partial Motion and deny Petitioners' Cross Motion insofar as it seeks summary judgment with respect to Counts I, II, and III of the Amended Petition.

## IV. CONCLUSION

 Accordingly, the OOR's and PASR's Amended Partial Motion is denied and Petitioners' Cross Motion is granted with respect to Counts IV and V of the Amended Petition. The OOR and the public school districts are enjoined from disclosing those records maintained by the public school districts, which contain the home addresses of public school employees, pursuant to a RTKL request until the affected employees have had written notice and a meaningful opportunity to object at the request stage to the disclosure of their home addresses based on, but not limited to, the personal security exception set forth in Section 708(b)(1)(ii) of the RTKL, 65 P.S. § 67.708(b)(1)(ii).[22] The OOR is directed to permit any public school employees who choose to exercise their procedural due process rights and object to the disclosure of any record maintained by a public school district which contains their home addresses to intervene, as of right, in an appeal from the denial of the RTKL request for such information or to appeal as an aggrieved party from a grant by the public school district of the RTKL request for their personal address information. Finally, the OOR is directed to take all reasonable steps necessary to notify public school districts of this Opinion and accompanying Order.

The OOR's and PASR's First Partial Motion seeking summary judgment as to Counts I, II, and III of Petitioners' Amended Petition is granted. Petitioners' Cross Motion seeking summary judgment as to Counts I, II, and III is denied. We grant further relief in accordance with this Opinion and as set forth in the accompanying Order.[23]

Judge SIMPSON did not participate in this decision.

## ORDER

**NOW,** February 17, 2015, it is hereby **ORDERED** as follows:

1. The Office of Open Records' (OOR) and the Pennsylvania Association of School Retirees (PASR) Partial Motion for Summary Judgment as to Counts I, II, and III of Petitioners' First Amended Petition for Review is **GRANTED** and Counts I, II, and III are **DISMISSED.**

2. Petitioners' Cross Motion for Summary Judgment as to Counts I, II, and III of the First Amended Petition for Review is **DENIED.**

3. The OOR's and PASR's Amended Partial Motion for Summary Judgment as to Counts IV and V of the First Amended Petition for Review is **DENIED.**

4. Petitioners' Cross Motion for Summary Judgment as to Counts IV and V of the First Amended Petition for Review is **GRANTED.**

5. The OOR and the public school districts are enjoined from disclosing, pursuant to a Right–to–Know Law request,

---

**22.** Although notifying an individual that his or her personal information has been requested may be costly for an agency with several thousand employees, permitting an individual who wishes to object to the disclosure of his or her personal data to intervene at the request stage may relieve the taxpayers from

carrying the burden normally placed on an agency of proving that a public record is exempt from disclosure.

**23.** Based on our disposition, we do not need to address the remaining issues raised by the parties in this matter.

those records maintained by the public school districts, which contain the home addresses of public school employees until the affected employees have had written notice and a meaningful opportunity to object at the request stage to the disclosure of their home addresses based on, but not limited to, the personal security exception set forth in Section 708(b)(1)(ii) of the Right–to–Know Law, 65 P.S. § 67.708(b)(1)(ii).

6. The OOR is directed to permit public school employees who choose to object to the disclosure of any record maintained by a public school district which contains their home addresses to intervene, as of right, in an appeal from the denial of a Right–to–Know Law request for such information or to appeal as an aggrieved party from a grant by the public school district of the Right–to–Know Law request for their personal address information.

7. The OOR is directed to take all reasonable steps necessary to notify public school districts in the Commonwealth of this Order.

### DISSENTING OPINION BY President Judge PELLEGRINI.

Succumbing to unfounded fears and a parade of speculative horribles, ignoring the public's control over public records, crippling the Right-to-Know Law (RTKL)[1] to such an extent that the public access to public records will be impeded, the majority finds that third parties have a right to notice if a person requests a public record that contains information personal to them without any showing that the release of the information constitutes a "substantial and demonstrable risk" to a particular individual. Because nothing justifies the majority's position in the RTKL, I respectfully dissent.

At issue in this case is whether the home addresses of public school employees are exempt from disclosure under the RTKL and whether the OOR should be enjoined from permitting such disclosure. The majority enjoins disclosure of the affected employees' home addresses at the request stage until each has had individual written notice and a meaningful opportunity to object to disclosure based on, but not limited to, the personal security exception set forth in Section 708(b)(1)(ii) of the RTKL, 65 P.S. § 67.708(b)(1)(ii).

The majority arrives at this conclusion because it finds that Section 708(b)(1)(ii) of the RTKL provides that a record is exempt from disclosure if the record "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. § 67.708(b)(1)(ii). Because the RTKL does not provide for notice when personal information is requested, the majority finds that the lack of notice deprives an individual, whose personal information may be exempt from disclosure pursuant to Section 708(b)(1)(ii), of procedural due process because it does not provide a mechanism to ensure that an affected individual has notice that his or her personal data has been requested and an opportunity to demonstrate that his or her personal security may be at risk if the requested information is disclosed.[2]

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–.3104.

2. If an employee does not want his or her home address or a person does not want his or her personal information released, it is incumbent on the employee to make the reason known to the district and how the release will subject him or her to a demonstrable and substantial harm so that the agency can make a reasoned judgment not to provide the information.

I disagree with the majority because 65 P.S. § 67.708(b)(1)(ii), regarding the personal security exemption, does not provide any property or personal right requiring that personal notice be given that a public record releasing personal information be given to that individual. I do so for several reasons. ˙

## I.

### A.

The majority assumes that disclosure of a home address constitutes a "substantial and demonstrable risk of physical harm to or the personal security of an individual."[3] In arriving at this position, it just assumes that it can exclude home addresses merely because they involve some personal information. However, the plain words of this exception says that the record released must have a "substantial and demonstrable risk" to an individual, not some vague speculation that some speculative harm is going to occur to everyone whose home address is released. Moreover, this provision, by its very terms, does not exclude a category of records from being disclosed, only specific records for a specific person.

### B.

However, the major flaw in the majority's analysis is that there must be a "substantial and demonstrable risk of physical harm to or the personal security" caused by the releasing of home addresses. There is no evidence in this case to support that assumption.

Most teachers are well known in the community in which they teach. In any event, finding out where they live is not all that difficult. Free online services provide home addresses, telephone numbers, a person's age, who else lives in the house, their ages, pictures of the home address and prior home addresses. For a small fee, these services will then provide you with a search of every public database and social media site. In the not too distant past, home addresses were readily discoverable; it was called the White Pages, which had both a person's home address and telephone number. To say that disclosing the home address affects personal security of a teacher is like saying disclosing the name of the teacher involved is a substantial and demonstrable risk. Nothing has been cited to us that disclosing information unique to an individual caused any harm to anyone. When asked, PSEA counsel could not cite one example. Home addresses are known or readily available so if they are released to the public, there can be no demonstrable risk because they are already known.

In fact, we have held disclosure of a public employee's middle name, even in conjunction with the release of the same

---

**3.** The majority makes this assumption based on our Supreme Court's statement in *Pennsylvania State Education Association ex rel. Wilson v. Commonwealth*, 616 Pa. 491, 50 A.3d 1263, 1274–75 (2012), that "school employees have (at the very least) a colorable interest in the grant or denial of RTKL requests for their personal address information—the RTKL does not make them parties to the request or the ensuing appeal process." A colorable claim does not mean that a claim has been made out, only that it is a plausible legal claim. For example, a constitutional right to counsel exists in a parole revocation matter where there is a colorable claim that the parolee has not violated parole or there are substantial reasons that revocation is inappropriate. *Miskovitch v. Pennsylvania Bd. of Probation and Parole*, 77 A.3d 66, 70 (Pa.Cmwlth. 2013). In other words, a claim is strong enough to have a reasonable chance of being valid if the legal basis is generally correct and the facts can be proven in court. In this case, there is no legal basis or facts that the release of home addresses will cause a substantial and demonstrable risk have not been made out with a whiff of evidence.

employee's home address information, would not be reasonably likely to result in a substantial and demonstrable risk because an individual could not reasonably expect to keep his or her middle name private because people routinely disclose their names to the public, and this information often appears in government records, telephone directories and numerous other documents that are readily accessible to the public. *See Office of Governor v. Raffle,* 65 A.3d 1105 (Pa.Cmwlth.2013). Because there has been no showing that releasing home addresses constitutes a substantial and demonstrable risk of physical harm to those individuals, there is no obligation to provide notice even if notice was otherwise required.

## II.

The core reason that I disagree with the majority is that it assumes that Section 708(b)(1)(ii) gives an individual some sort of private right not to disclose what is in a public record. If an individual has a right conferred by the General Assembly, then the majority provides that it must have a right to have some notice so that it may object to the release of the information. What then follows is that if the person objects to the release of the information, and the agency releases the information anyway because it finds that it does not constitute a "substantial and demonstrable risk of physical harm," then the majority, to be consistent, states that a person has a right to appeal the release of those records.

What the foregoing ignores is the RTKL provides no such right by a private individual to impede the release of public records, preclude the release of public records, or appeal the release of public records. Public records are records of the public, not of a private individual. The RTKL provides:

• Only the government can assert that a record is exempt. Section 506(a) of RTKL, 65 P.S. § 67.506(a), places the burden solely on the governmental agency to prove the record is exempt from public access It gives no role to any private individual.

• Nothing in the RTKL gives a private individual the right to challenge the release of a public record. Under Section 1101(a)(1) of the RTKL, 65 P.S. § 67.1101(a)(1), only the requester has a right of appeal to the OOR if a request for a record is *denied.* No provision is made for an appeal to OOR by a private person if access to the record is *granted.* Also it only gives the requestor the right to appeal from a decision releasing personal information. An affected individual only has a discretionary and conditioned right if he or she is "aware" of the proceeding. Notably the RTKL does not provide notice to the individual.

• The agency can release the record even if it falls within one of the exceptions. Section 506(c) of RTKL, 65 P.S. § 67.506(c), provides that an agency, with some exceptions not relevant here, "may exercise its discretion to make an otherwise exempt record accessible for inspection and copying ...." This provides that an agency can give up any record, even though it is otherwise exempt from disclosure, further evidencing that no one has a right to public records.

• If the General Assembly wanted to give notice, it knew how to do so. Section 707(b) of the RTKL, 65 P.S. § 67.707(b), provides pre-disclosure notice if a trade secret is released. No such provision is required for personal information.

These provisions conclusively establish that the General Assembly did not intend to give any private person any cognizable interest that would require that he or she

receive notice that a public record was going to be released. No provision of the RTKL gives any person any right in any public document or any right (except for trade secrets) to prevent the disclosure of a public document. If the General Assembly wanted an individual to have notice, it would have done so just as it did with notice concerning the disclosure of a trade secret. Because there is no cognizable interest for the release of personal information, due process does not require notice because no right is being taken away and I also dissent on this basis.

### III.

As the majority states, "the RTKL is designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *Pennsylvania State Police v. McGill,* 83 A.3d 476, 479 (Pa. Cmwlth.2014). To accomplish this purpose, the General Assembly wanted to have relatively simple and fast methods by which an individual can gain access to public records by providing strict time limits for the agency to respond to the request for records.[4] The majority now requires agencies to give notice to a class of individuals any time a record contains information that is "personal" before there is a showing of a substantial and demonstrative risk of harm. The net of effect of requiring notice will delay a response and place an undue burden on agencies that have to give personalized notice involving, in this case alone, hundreds of thousands of notices. This undue burden on agencies in both time and money, especially local agencies, will frustrate the purposes of the RTKL and take away from the agencies' ability to provide essential services.[5]

4. Agencies must respond to requests within five days of receipt and are only granted a single 30–day extension if there is sufficient justification. Sections 901–902 of the RTKL, 65 P.S §§ 67.901–67.902.

5. In response to this dissent, in footnote 15, the majority states that there is a proposed amendment to the RTKL that an employee would have to receive 14 days' notice after a request is made to assert the personal security exemption. First, if an amendment to RTKL is needed to require notice, this shows that the presently-enacted RTKL does not require notice when a home address is requested. Second, even assuming that we live in a world where home addresses and more are not readily discoverable, the employee should have the personal responsibility to inform the agency before a request is made if he or she has a demonstrable and substantial need not to release his or her home address. This would alleviate the time and expense of an agency sending out thousands of notices when a request is made such as the one here. Third, if we are concerned that the release of home addresses will somehow constitute a demonstrable and substantial risk, a non-employee whose address appears in a public record also deserves notice. The notice re-

quirement should not only be used to protect the personal information of government employees.

In footnote 18, the majority appears to agree that providing notice will frustrate the purpose of the RTKL or take away from an agency's ability to provide essential services, but blames the General Assembly for providing for the personal security exception. This ignores that requiring notice when notice is not required in the RTKL frustrates the purposes of the act and impedes an agency's ability to provide essential services. The majority is also unaware that the import of its decision extends far beyond the release of home addresses. Building permits, business licenses, government contracts and a myriad of other government records that contain personal information that is not easily discoverable, unlike home addresses, have more of an impact on personal security than the release of home addresses. Under the majority's analysis, an agency will have to give notice when there is personal information being released if the release has a whiff that personal security is affected even if that information is generally available. We should remember that home addresses and contracts and agency records that have detailed personal infor-

For the foregoing reasons, I respectfully dissent.

Judge McGINLEY joins in this dissenting opinion.

## CONCURRING OPINION by Judge BROBSON.

I agree entirely with the majority's conclusion that due process must be afforded to those whose personal information is sought through the Right–to–Know Law (RTKL).[1] Consistent with the parties' arguments, the majority rightly focuses on the personal security exception, Section 708(b)(1)(ii) of the RTKL, as creating a statutory protection against the disclosure of personal information. There are, however, other exemptions that afford similar protections. Section 708(b)(5) of the RTKL creates an exemption for personal medical, psychiatric, or psychological information. Section 708(b)(11) protects trade secret or confidential proprietary information. Section 708(b)(13) protects the identity of an individual who makes a lawful donation to an agency, with some exceptions. Section 708(b)(14) protects unpublished materials of State System of Higher Education faculty, staff, guest speakers, and students. Section 708(b)(30) protects identifying information of a child that is seventeen years of age or younger. Any information that falls within these exemptions *is not* a public record, by definition. *See* Section 102 of the RTKL (providing definition of "public record," which expressly excludes a record that is exempt under Section 708); Section 301(a) of the RTKL (requiring public access to a "public record" under RTKL); Section 701(a) of the RTKL (requiring public access to a "public record" under RTKL).

While some may expect our government to protect scrupulously these exemptions and thus not disclose records that, because they are exempt, are *not public*, the government is under no obligation to do so. To the contrary, Section 506(c) of the RTKL expressly grants the agency the discretion to disclose exempt and thus nonpublic, information under certain circumstances:

**Agency discretion.**—An agency may exercise its discretion to make any otherwise exempt record accessible for inspection and copying under this chapter, if all of the following apply:

(1) Disclosure of the record is not prohibited under any of the following:

(i) Federal or State law or regulation.

(ii) Judicial order or decree.

(2) The record is not protected by a privilege.

(3) The agency head determines that the public interest favoring access *outweighs any individual,* agency or public interest that may favor restriction of access.

(Emphasis added.)

If an agency head exercises this discretion to disclose exempt, nonpublic information of an individual, the law does require notice to the affected individual or entity whose information is sought. The law requires pre-disclosure notice if trade secret or confidential information is involved. Section 707(b) of the RTKL. That notice must be given within five business days of the agency's receipt of the request. With

mation have all been released for decades. I am unaware, and no one in this case has made us aware, of any personal harm that has resulted from the release of these types of records. When did we become so scared?

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

respect to other exempt information, however, the required notice is *after-the-fact:*

> *If*, in response to a request, *an agency produces a record that is not a public record*, legislative record or financial record, the agency shall notify any third party that provided the record to the agency, the person that is the subject of the record and the requester.

Section 707(a) of the RTKL (emphasis added). Unlike the trade secret and confidential notice provisions, however, there is no time period for such after-the-fact notice in Section 707(a). To me, the notice provision in Section 707(a) is insufficient to protect the interests of individuals who would seek to protect certain nonpublic personal information from disclosure under the RTKL.

For these additional reasons, I agree with the majority's result in this matter. This result, however, can and should logically extend to require due process protections involving all records that fall within all exemptions in the RTKL intended to protect personal information of the individual or entity who provided the information to the government agency, and not just the personal security exemption.

Judge LEADBETTER and Judge COHN JUBELIRER join in this concurring opinion.

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–.3104.

2. To maintain a due process challenge, a party must establish the deprivation of a protected property or liberty interest. *Miller v. Workers' Compensation Appeal Board (Pavex, Inc.)*, 918 A.2d 809, 812 (Pa.Cmwlth.2007). "Property interests ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "To have a property interest in a

CONCURRING OPINION by Judge McCULLOUGH.

I join the Majority's opinion as it concludes that the lack of procedural due process afforded under the Right–to–Know Law (RTKL)[1] violates the expressed intent to protect an individual from personal harm or the risk to personal security that may result from disclosure of certain records.

I also agree with the Majority that our Supreme Court in *Pennsylvania State Education Association ex rel. Wilson v. Commonwealth*, 616 Pa. 491, 50 A.3d 1263, 1275–76 (2012) (*PSEA III*), strongly hinted that the statutory scheme of the RTKL, as it pertains to home addresses and the personal security exception in section 708(b)(1)(ii), 65 P.S. § 67.708(b)(1)(ii), implicates and most likely violates procedural due process. (Maj. op. at 1084–85.) I write separately to express the view that our Supreme Court's concerns in *PSEA III* are well founded.

The RTKL exempts from disclosure a record that "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or **the personal security of an individual.**" Section 708(b)(1)(ii) of the RTKL, 65 P.S. § 67.708(b)(1)(ii) (emphasis added). Under a traditional procedural due process analysis,[2] section 708(b)(1)(ii) of the RTKL confers upon an "individual" an uncondi-

---

benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005). If such a property interest is established, the due process clause, in general, requires reasonable notice and opportunity to be heard before governmental action may deprive an individual of that property interest. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993).

tional, substantive right to protect his/her right to privacy, including a person's home address, upon evidence demonstrating that disclosure of such personal information could reasonably pose a risk to the individual's "personal security." [3] Yet, paradoxically, the RTKL does not grant the individual a procedural mechanism by which to assert this substantive right and make the requisite evidentiary showing, and, in so doing, the RTKL represents an anomaly by simultaneously taking away that which it has granted. Consequently, the individual, although vested with the statutory entitlement to assert his/her privacy interests in an attempt to shield sensitive information from being disclosed to the public, is deprived of this right because, under the RTKL, it exists in theory only and cannot be exercised or vindicated in any delineated manner.

Having concluded that Petitioners possess a property interest in the form of a statutory entitlement, I agree with the Majority that pursuant to the due process clause, individuals must receive notice and an opportunity to be heard before information related to their personal security can be disclosed to the public. As a practical matter, these due process measures must be instilled into the RTKL for this is the only way in which an individual can enforce his/her statutory right to exempt information that threatens his/her personal security. Accordingly, I join the Majority's decision to grant summary judgment to Petitioners on Counts IV and V of Petitioners' First Amended Petition for Review.

Moreover, I write separately to emphasize that, while we are bound by the majority opinions in *Office of Lieutenant Governor v. Mohn*, 67 A.3d 123 (Pa.Cmwlth. 2013) (*en banc*), and its companion, *Office of the Governor v. Raffle*, 65 A.3d 1105 (Pa.Cmwlth.2013) (*en banc*), concluding that there is no constitutional right to privacy in one's home address under the Pennsylvania constitution, our Supreme Court has not issued an explicitly similar ruling or definitively resolved the issue. As the Majority recognizes, the Supreme Court's decision in *Commonwealth v. Duncan*, 572 Pa. 438, 817 A.2d 455, 459 (2003), did not hold that an individual would never have a constitutionally protected expectation of privacy in his or her home address. For the reasons set forth in my minority opinions in *Mohn* and *Raffle*, I would conclude that a constitutional right of privacy in one's home address is implied into the "personal security" exception as a matter of law. *See Mohn*, 67 A.3d at 141–42 n. 3 (McCullough, J., concurring and dissenting). However, this Court is not writing on a clean slate, and abiding by the majority's holdings in *Mohn* and *Raffle*, I agree with the Majority's decision in this case to dismiss Counts I, II, and III of Petitioners' First Amended Petition for Review.

---

**3.** Although a minority of the members of this Court have expressed the belief that the term "personal security" embodies a constitutional right to privacy in one's home address, *see Office of Lieutenant Governor v. Mohn*, 67 A.3d 123, 134–39 (Pa.Cmwlth.2013) (*en banc*) (Cohn Jubelirer, J., concurring); *id.* at 141–42 n. 3 (McCullough, J., concurring and dissenting), an *en banc* panel of this Court has interpreted "personal security" to include at least a statutory-based right to privacy. *Delaware County v. Schaefer*, 45 A.3d 1149, 1156 n. 10 (Pa.Cmwlth.2012) (*en banc*). This author has advocated the position that the privacy right associated with an individual's home address is encompassed within the term "personal security" as a matter of judicial construction or, alternatively, is implied as a matter of constitutional law. *See Mohn*, 67 A.3d at 140–42 (McCullough, J., concurring and dissenting).